Dale Patrick KNABE, Appellant,

v.

The STATE of Texas, State.

No. 2–90–051–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 2, 1992.

Rehearing Overruled Oct. 6, 1992.

Hardy F. Burke, Denton, for appellant.

Bruce Isaacks, Dist. Atty., Kathleen A. Walsh, Paul Johnson, Vicki Foster, Asst. Dist. Attys., Denton County, and Robert Huttash, State Pros. Atty., Austin, for the State.

Before WEAVER, C.J., and JOE SPURLOCK, II and HILL, JJ.

## OPINION

HILL, Justice.

Dale Patrick Knabe appeals his conviction by a jury of the offense of aggravated sexual assault of a child. The jury assessed his punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division. Knabe presents nine points of error.

We reverse and remand because we hold that the evidence of guilt is sufficient to support the conviction but that the evidence is insufficient to prove venue.

Knabe contends in points of error numbers two and three that the trial court erred: (2) in denying his motion for instructed verdict because the outcry was the sole evidence linking him to the offense and the victim under oath totally repudiated the outcry statement; (3) in denying his motion for instructed verdict because the evidence is insufficient to support his conviction.

In determining whether the evidence is sufficient to support the conviction, we will consider the evidence in the light most favorable to the verdict and, after so viewing the evidence, we will determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

The victim's grandfather, Earl W. Lowe, testified that on August 12, 1989, at about six to seven o'clock p.m., he was giving the victim a bath when the victim told him that his father, Knabe, had made him "suck his dick" and also told him that his father had stuck his penis in his rear. On cross-examination, Lowe, when asked on what day of the week or month the child made the statement, answered that he did not know because he did not keep up with the day of it.

The victim was examined by more than one doctor. One of those physicians testified that the victim had told him that someone had put his "goober" in his "bo-bo," names the victim had been told to use instead of "penis" and "anus." The physician said that the victim had a large laceration in his anus. Although the doctor could not confirm that the laceration was caused by a penis, he concluded that the injury could have been caused by a penis.

The victim, who was five years old, testified that it was Christopher, not his father, who was guilty of the acts alleged. He denied telling the doctor that his father, Knabe, had done it. He said that he had told his grandfather that Christopher had stuck his "bo-bo" in his butt. He also denied telling the assistant district attorney that his father had molested him.

The victim's mother testified, for purposes of impeachment, that the victim had first told her and the doctors that his father, Knabe, had put his penis in his anus, but that he later freaked out when she asked him if Christopher had baby-sat with him. She said he started crying, went into a rampage, threw a fit, and said, "Mommy, I can't tell you. Christopher is going to kill me." She told of seeing blood coming out of the victim's anus on July 23, 1989, and that the victim had lived with his father from June, 1989 to July 23, 1989.

Christopher, the victim's baby-sitter, was seventeen at the time of trial. He testified, denying that he was ever alone with the victim when he baby-sat with him, denying that he was guilty of putting his penis in the victim's mouth or in his anus, and denying that he had threatened to kill the victim.

We hold that the evidence is sufficient to support Knabe's conviction.

Knabe insists that when an out-of-court, unsworn hearsay statement is the only evidence of guilt and the declarant totally repudiates it in court, the hearsay evidence is insufficient to support a verdict of guilt beyond a reasonable doubt. He relies on court of appeals decisions in the cases of *Forrest v. State*, 769 S.W.2d 298 (Tex.App.—Houston [1st Dist.] 1989), *rev'd*, 805 S.W.2d 462 (Tex.Crim.App.1991); *Chambers v. State*, 755 S.W.2d 907 (Tex. App.—Houston [1st Dist.] 1988), *rev'd*, 805 S.W.2d 459 (Tex.Crim.App.1991); and *Fer-*

*nandez v. State*, 755 S.W.2d 220 (Tex. App.—Houston [1st Dist.] 1988), *rev'd*, 805 S.W.2d 451 (Tex.Crim.App.1991). As can be noted by the citations of those authorities, all have been reversed by the Texas Court of Criminal Appeals, which repudiates the theory argued here by Knabe.

The Texas Court of Criminal Appeals has stated that the testimony of an outcry witness—that the complainant told them that the defendant committed the offense—must be considered as having probative value in determining the sufficiency of the evidence, and that such an outcry statement is, by itself, sufficient to support a jury's verdict. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App.1991).

Knabe also relies on the cases of *Wall v. State*, 417 S.W.2d 59 (Tex.Crim.App.1967) and *Ledet v. State*, 533 S.W.2d 817 (Tex. Crim.App.1976). Both of those cases predate the adoption of article 38.072 in 1985. TEX.CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp.1992). Unlike testimony admitted under article 38.07, testimony admitted under article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony, because it is an exception to the hearsay rule. *Rodriguez*, 819 S.W.2d at 873. *See* TEX.CODE CRIM.PROC.ANN. arts. 38.07, 38.072 (Vernon Supp.1992).

■ Knabe argues that this is a circumstantial evidence case and that the hypothesis that Christopher, the baby-sitter, committed the offense is a reasonable one and that the evidence supports that hypothesis.

This case was tried prior to the opinion of the Texas Court of Criminal Appeals in *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim. App.1991). Consequently, if this is a case supported by circumstantial, rather than direct, evidence, we must examine the evidence to see if it supports a reasonable hypothesis other than Knabe's guilt. *Madden v. State*, 799 S.W.2d 683, 690 (Tex. Crim.App.1990). As we have already acknowledged, there was some evidence to support the hypothesis that Christopher, the victim's baby-sitter, had committed the offense. However, we have also noted that Christopher testified that he had not com-

mitted the offense. Consequently, the evidence concerning the reasonable hypothesis was conflicting. We hold that because the evidence concerning the reasonable hypothesis is conflicting, a rational jury may consider the evidence and determine the conflict in favor of conviction. We overrule points of error numbers two and three.

■ Knabe urges in point of error number four that the evidence is insufficient to prove venue in Denton County as alleged in the indictment. When venue is made an issue in the trial court, failure to prove venue in the county of prosecution constitutes reversible error. *Black v. State*, 645 S.W.2d 789, 791 (Tex.Crim.App. 1983). Knabe raised the issue at trial by motion at the conclusion of the testimony. Venue in criminal cases need only be proven by a preponderance of the evidence, which may be either direct or circumstantial. *Id.* at 790. The evidence is sufficient if from the evidence the jury may reasonably conclude that the offense was committed in the county alleged. *Rippee v. State*, 384 S.W.2d 717 (Tex.Crim.App.1964).

The victim testified that Christopher, the baby-sitter committed the offense at his house, a mobile home in Sherwood Mobile Home Park. He said that he and his father lived in a house in Willow Oaks. He did not know where they moved to, nor did he say when they moved.

Earl Lowe testified that after his daughter separated from Knabe, which he thought was in June, 1989, he heard that Knabe lived in Lake Dallas or Denton. Both cities are located in Denton County, Texas. He further stated that the victim lived with Knabe for a time, about a month and a half. He indicated that the victim was with Knabe from June 1989 to late July, 1989. He did not have personal knowledge as to the county in which Knabe was living at that time. He did not relate that the victim had told him where he and his daddy were when the offense occurred.

Helen Wright testified that she was Knabe's landlady at 2309 Shady Shores Road in Denton, Unit 6, from June 12, 1989 to August 3, 1989. She said that she did

not know whether or not the victim lived there with Knabe, but that she had seen him there some and some of his toys and clothes were kept there.

As we have previously noted, the victim's mother testified that she had seen blood coming out of the victim's anus on July 23, 1989, and that her son had lived with his father from June, 1989 to July 23, 1989.

█ There was no direct testimony that anything was done to the victim at his father's house. Since the exact time of the offense is unknown, there was no testimony that the victim or Knabe were present at the house at the time the offense is supposed to have occurred. The only direct testimony that anything occurred in Denton County was the child's testimony that the baby-sitter had done it in his house. The baby-sitter later testified that he lived in Denton. We do not think that there is any circumstantial evidence from which one could reasonably infer that Knabe assaulted the victim at his residence. We therefore hold that the evidence is insufficient because the jury could not reasonably conclude that the offense occurred in Denton County. We sustain point of error number four.

In view of our disposition of points of error numbers two through four, we need not consider the other points of error.

The judgment is reversed and this cause remanded. *See Black v. State*, 645 S.W.2d 789, 791 (Tex.Crim.App.1983).