

NUMBER 13-13-00412-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**EDDIE WAYNE CALHOUN,**                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

### On appeal from the 27th District Court of Bell County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

By two issues, appellant, Eddie Wayne Calhoun, appeals his conviction for one count of indecency with a child by sexual contact, *see* TEX. PENAL CODE ANN. § 21.11 (West, Westlaw through 2013 3d C.S.) and one count of indecency with a child by exposure, *see id.* § 21.11 (West, Westlaw through 2013 3d C.S.). We affirm.

# I. BACKGROUND[1]

A Bell County grand jury indicted Calhoun on one count of indecency with a child by sexual contact, *see id.* § 21.11, and one count of indecency with a child by exposure, *see id.* § 21.11. Calhoun pleaded not guilty. The following evidence was presented at Calhoun's trial by jury.

On July 23, 2010, the Bell County Sheriff's Department responded to a domestic disturbance call on Shaw Road where Calhoun and his common law wife, Angela Cunningham, were having an argument at their trailer home. At that time, Cunningham informed Officer Pinkert that three years earlier, she witnessed Calhoun lying undressed on top of her daughter, K.C., and that he appeared to be having sex with her.

During trial, K.C. testified that she was eight years old the first time her step-dad, Calhoun, touched her inappropriately when the family was living in their trailer home in Leander, Texas. The first incident involved Calhoun bringing K.C. to his and Cunningham's bedroom in the middle of the night where he asked K.C. to take off her pants. According to K.C., Calhoun rubbed his body against her body and rubbed her legs and inner thigh with his hand. K.C. testified that she believed Calhoun to be "drunk" at the time based on his behavior. K.C. stated that she eventually fell asleep next to her mother that night, woke up the next morning, and returned to her bedroom before Calhoun and her mother woke up.

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. See TEX GOV'T CODE ANN. § 73.001 (West, Westlaw through 2013 3d C.S.).

The second incident occurred when the family moved to Shaw Road in Bell County, Texas. K.C. testified that she was asleep in the living room of the family's trailer home when Calhoun woke her up and began touching her vagina, breasts, and buttocks with his hands. Next, K.C. testified that she and Calhoun were in the family's "nanny trailer," which is a separate trailer from the one in which they lived, and that he exposed his genitals to her and asked her to touch him. K.C. testified that she rubbed his genitals with her hands and that his penis hit her face when she fell out of the "nanny trailer" due to the decaying conditions of the trailer. According to K.C., Calhoun continued to expose himself to K.C. on several occasions and offered her money to touch him but she refused.

K.C. also testified that, one day, she was lying on the living room floor while Calhoun licked her buttocks when Cunningham walked in and witnessed what was going on. According to K.C., Cunningham screamed and ran into a bathroom and locked the door. K.C. testified that prior to this incident, she had told her mother twice that Calhoun had been touching her inappropriately. Cunningham testified that she did not report this alleged abuse because she was "scared" and "had no place to go." It was not until the night of July 23, 2010 that Cunningham informed Officer Pinkert what she had witnessed.

The jury found Calhoun guilty as charged and the presiding judge sentenced Calhoun to eight years' imprisonment for count one and three years' imprisonment for count two, to run concurrently in the Texas Department of Criminal Justice—Institutional Division. This appeal ensued.

## II.    VENUE

By his first issue, Calhoun asserts that the State failed to prove venue for prosecution in Bell County and thus failed to provide the evidence needed to sustain the

3

conviction under count one (indecency with a child by sexual contact) of the State's indictment.

### A. Applicable Law and Standard of Review

Calhoun incorrectly asserts that the appropriate standard of review for this issue is the legal sufficiency standard articulated in *Jackson v. Virgina*, 443 U.S. 307, 318-319 (1979). We construe Calhoun's first issue as a challenge only to the sufficiency of evidence regarding venue and not to any element of the underlying offenses. Venue is not an "element of the offense" under Texas law. *See Boyle v. State*, 820 S.W.2d 122, 140 (Tex. Crim. App. 1989), *overruled on other grounds by Gordon v. State*, 801 S.W.2d 899 (Tex. Crim. App. 1990); *Fairfield v. State*, 610 S.W.2d 771, 779 (Tex. Crim. App. 1981) (panel op.); *Edwards v. State*, 427 S.W.2d 629, 636 (Tex. Crim. App. 1968). A venue error is distinguished from insufficient evidence in that it involves "merely a finding concerning the geographic location where the case may be tried, and it is not a finding of insufficient evidence of a required element of the offense or even a finding that the court lacked jurisdiction." *Schmutz v. State*, No. PD-0530-13,__S.W.3d__, 2014 WL 300810. (Tex. Crim. App. Jan. 29, 2014). Therefore, an allegation of improper venue does not implicate the *Jackson* sufficiency standard.

Instead, when a special venue statute does not apply, the State's burden to prove venue is by a preponderance of the evidence that the county of prosecution is where the offense was committed. *See* TEX. CODE CRIM. PROC. ANN. art. 13.17 (West, Westlaw through 2013 3d C.S.); *see also Murphy v. State,* 112 S.W.3d 592, 604. (Tex. Crim. App. 2003). Venue need not be proved beyond a reasonable doubt and may be proved by circumstantial as well as direct evidence. *Rippee v. State*, 384 S.W.2d 717, 718 (Tex.

4

Crim. App. 1964). The evidence regarding venue is sufficient if from the evidence, the jury may reasonably conclude that the offense was committed in the county alleged. *Knabe v. State*, 836 S.W.2d 837, 839 (Tex. App.—Fort Worth 1992, pet. ref'd).

### B. Discussion

Calhoun argues that the trial court erred by denying his motion for directed verdict on count one because the State failed to prove venue for prosecution in Bell County. We disagree.

Calhoun maintains that venue is improper because K.C. testified that the only time he touched her vagina was in Leander, Texas, which is not in Bell County. However, Calhoun was not charged with touching K.C.'s vagina. Count one of the indictment states that Calhoun did then and there, with the intent to arouse or gratify his sexual desire, intentionally and knowingly caused K.C., a child younger than 17 years of age, to engage in sexual contact by *causing K.C. to touch Calhoun's genitals in Bell County, Texas*. (Emphasis added).

Section 21.11(a)(1) of the Texas Penal Code provides that the offense of indecency with a child may be committed by causing the child to engage in sexual contact with another person. Subsection (c)(1) includes in the definition of sexual contact the touching by any person of the genitals, breast or anus of a child under seventeen years of age. *Id.* § 21.11 (c)(1). K.C. testified that in their "nanny trailer" on Shaw Road in Bell County, Calhoun forced her to rub his genitals and that his penis hit her face when she fell out of the trailer. The State was not required to prove that Calhoun touched K.C.'s vagina in Bell County, only that Calhoun caused K.C. to engage in sexual contact by causing her to touch his genitals in Bell County. Here, the preponderance of the

5

evidence burden was met through K.C.'s testimony. Accordingly, the trial court did not err in denying Calhoun's motion for directed verdict regarding the state's purported failure to prove venue.

Calhoun's first issue is overruled.

### III. EXCLUSION OF TESTIMONY

By his second issue, Calhoun contends that the trial court erred when it excluded testimony of Matthew Ferrara, Ph.D., on the subject of human memory. The trial court allowed Dr. Ferrara to testify about three factors that may lead to false accusations of sexual abuse by child victims. However, the trial court sustained the prosecutor's objection and refused to permit Dr. Ferrara to testify on the subject of human memory when Dr. Ferrara communicated to the trial court that he did not consider himself an expert on human memory.

### A. Applicable Law and Standard of Review

As a general rule, the record must show that the complaint made on appeal was timely made to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context [.]" *Weeks v. State*, 396 S.W.3d 737, 741 (Tex. App.—Beaumont, pet. ref'd) (quoting TEX. R. APP. P. 33.1). To preserve error regarding the exclusion of evidence, a party must communicate to the Court that the evidence is admissible and must also explain why the evidence is admissible. *Reyna v. State*, 168 S.W.3d 177–79 (Tex. Crim. App. 2005).

### B. Discussion

Dr. Ferrara, a licensed psychologist and sex offender treatment provider, made it clear that he did not consider himself an expert on the human memory. Dr. Ferrara

stated that he did not feel comfortable testifying about the human memory and said he would stay away from the subject. Furthermore, Dr. Ferrara stated that he was not familiar with the term "embedded memory" during questioning by the prosecutor and expressly responded, "Yeah, I stay away from false memory" during questioning by the defense counsel.

When the State questioned Dr. Ferrara on his knowledge of human memory, he recalled that his textbooks in school had a chapter based on memory research but he could not cite any such research to the court. When asked if he had written anything on the subject, his response was, "It's possible I did," but he could not provide a definite answer. Dr. Ferrara testified that he had not written anything on the subject of human memory, and could not recall giving a presentation on the subject.

When the trial court limited Dr. Ferrara's testimony only to subject matter within his expertise, Calhoun made no objection and agreed that any testimony by Dr. Ferrara regarding human memory should be excluded:

| [Prosecutor]: | It should be limited in scope of what this expert just said he would testify to, which are the three general principles, and those general principles only, and the overlap and where the overlap comes from in this case. That's what I'd be asking— |
|---|---|
| [Defense Counsel]: | I have no problem with that—I—I'm going to defer to him. |
| The Court: | Well, that means you're not going to get into what you just got into with him. |
| [Defense Counsel]: | No, no. |
| The Court: | All right. I'll sustain the objection. I'll limit it to in that regard. |

| | |
|---|---|
| [Prosecutor]: | Ok. |
| [Defense Counsel]: | To the overlapping that we talked about? |
| The Court: | The three areas. |
| [Defense Counsel]: | No problem. |

As the proponent of the evidence, Calhoun made neither a proffer of testimony nor any effort to place on the record what Dr. Ferrara's testimony on human memory would have been. When the trial court sustained the prosecutor's objection regarding human memory, Calhoun made no complaint and agreed with the Court. Calhoun failed to preserve anything for review.

Calhoun's second issue is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
29th day of August, 2014.

8